# EXHIBIT A

VOLUNTARY ARBITRATION PROCEEDINGS
FEDERAL MEDIATION CONCILIATION SERVICE

| | |
|---|---|
| In the Matter of the Arbitration | ( Opinion and Award: |
| | ( |
| Between | ( FMCS Case No.:   190314-05146 |
| | ( |
| | ( Grievant:   Pat Woodward |
| Welch Foods, Inc. | ( |
| | ( Date of Hearing:   April 26, 2019 |
| | ( |
| and | ( Record Closed:   August 5, 2019 |
| | ( |
| | ( Date of Award:   October 5, 2019 |
| General Teamsters, | ( |
| Local Union No. 397 | ( |

Representing the Company:          James A. Prozzi, Esq.
                                   Attorney

Representing the Union:            Ernest B. Orsatti, Esq.
                                   Attorney

                                   Michelle Miller-Kotula
                                   Arbitrator

I.    **THE GRIEVANCE**

Pat Woodward, the grievant herein, a bargaining unit employee for Welch Foods,

Inc. (hereafter referred to as the "Company") and a member of General Teamsters, Local

Union No. 397 (hereafter referred to as the "Union") was issued the following

termination of employment letter on January 21, 2019 by the Company:

> This letter is to inform you that are terminated from employment at Welch's as of
> January 11, 2019 for creating a hostile work environment.  Your threatening and
> intimidating behavior and language used in the breakroom on January 11, 2019
> violates Welch's Rules of Conduct.  Specific violations include:
>
> -   Disrespectful language that was abusive, sexually explicit and derogatory
>     towards another co-worker and women in general.
> -   Behavior which violates standards of common sense, common dignity or is in
>     reckless disregard of your fellow employees or your company.
>
> Sentinel, our COBRA benefits administrator, will notify you as to your rights to
> continue medical coverage under Blue Cross/Blue Shield.
>
> Your dental and vision benefits will end on April 30, 2019.  To determine if you
> have any conversion or continuation rights under the Dental and Vision Benefits
> Plan (if you would be interested in having your own plan), you should contact the
> Plan administrator at:
>
> > Trustees of the Western PA Teamsters and
> > Motor Carriers Welfare Fund
> > 50 Penn Circle West
> > Pittsburgh, PA 15206
>
> Feel free to contact me if you have any questions or require additional
> information.

On January 22, 2019, the Union filed a grievance on his behalf.  The grievance

was filed in accordance with the collective bargaining agreement between Welch Foods,

Inc. and General Teamsters, Local Union No. 397, Erie, Pennsylvania, an affiliate of the

International Brotherhood of Teamsters, dated June 7, 2016 to June 6, 2020 (North East

Plant) (hereafter referred to as the "CBA").  The grievance read as follows:

Pat Woodward was terminated on January 21 for violating the Welch's "Rules of Conduct" Policy. The Union feels Pat should be reinstated to full time employment.

The adjustment requested read as follows:

Reinstate Pat to full-time employment and make any losses whole.

The Company denied the grievance and issued the following response:

The Step III Meeting was held on January 29, 2019 in an attempt to resolve the following grievances:

(text relevant to this grievance):

The Company received Grievance No. 7148 on 1/22/19 by Frank Waters on behalf of Pat Woodward for Unjust Termination.

The Union is requesting reinstatement and did not feel this offense was terminable.

During the meeting Pat stated that he was wrongfully accused and set up by Terri. He denied saying anything sexually inappropriate to Terri. Pat also made statements to discredit the witness.

The Union is requesting reinstatement and did not feel this offense was terminable.

Due to the results of the investigation and the seriousness of the offense, the Company respectfully denies this grievance at Step III.

The following Step 4 grievance response was issued by the Company on March 8, 2019

which indicated:

On Friday, February 22, 2019, we met to discuss three open fourth step grievances. Summarized below is the Company response to the grievances reviewed during the meeting:

(text relevant to this grievance):

**Grievance #7148-Pat Woodward, Unjust Termination**

Grievance #7148 was submitted on January 22, 2019 to contest the termination of Pat Woodward.

Pat was terminated on January 21 for his role in a hostile argument with coworker Terri Lawson on January 11. It was determined that during this argument, Pat used language that was abusive, sexually explicit, and derogatory towards Terri and women in the workplace. In addition to creating a hostile work environment, he engaged in behavior that was threatening and intimidating. Among other things, Pat referred to Terri and female coworkers as Self-serving Vagina Bitches and fucking worthless. He gestured to his groin area and made a comment along the lines of 'if you don't have one of these you are no good'. He also puffed out his chest and slapped the table.

Pat believes he was set up by Terri and Rob Ferringer. During the step four meeting, Pat denied almost every claim that came from Terri's statements along with Rob's (soul witness) statements. He also contested his own statements from the initial investigations where he said he puffed out his chest, he lost control of his emotions and proceeded to yell, and he probably crossed the line.

In the meeting, Pat stated he did not yell "like screaming" he was just calling Terri out for her actions. He claims he did not puff out his chest, he simply has a large chest because he works out frequently. He claims he did not slam the table, he 'slapped' his hand down signifying he was done with the conversation. He admits to using some of the curse words that he was being accused of, however not in the context Terri and Rob are claiming. For example, he said the word 'vagina', but only to ask Terri "why are you telling people I won't help them if they have a vagina".

Of the claims put forward, Pat only admitted to calling out Rob Ferringer and Patty Waters for being some of the worst employees in the plant, and calling Rob a "sideliner".

The Union stated that this confrontation was not harmful to the Company, was on their own time, and only involved "colorful" language. The Company wholeheartedly disagrees with the Union's characterization of this incident. Downplaying the situation gives the impression that it is okay to consider females as inferior workers, use derogatory language in an argument, call out coworkers' performance, and create a hostile work environment.

Pat had an explanation for every concern the Company had, however they directly contradicted Terri's statements, witness statements, and even some of his own statements from the initial investigation. Welch's position remains the same. This grievance is denied at the fourth step.

The grievance remained unresolved and was appealed to arbitration. This arbitrator was selected to hear and decide the issue through the offices of the Federal

Mediation and Conciliation Service. Accordingly, a hearing was held in Erie, Pennsylvania on April 26, 2019. During the hearings, the parties were able to present evidence, both oral and written, to examine and cross-examine the witnesses who were sworn and to argue their respective positions. At the conclusion of the hearing the parties decided to file post hearing briefs. The briefs received in the office of the arbitrator and the record was considered closed.

## II.   **STIPULATION**

Whether or not there was just cause to discharge Pat Woodward, the grievant?

## III.   **BACKGROUND**

David Piontkowski testified he has been Plant Manager for over three years. He is responsible for the entire operation which produces juice. He oversees the departments and operations. The Company employs 350 individuals including managers, supervisors, technicians and bargaining unit employees. In the production and maintenance unit, there are 290 employees. He discussed the duties of the different departments. He pointed out 70 employees work in processing. A Steward is assigned to each department. Mr. Piontkowski described the breakroom.

The employees work 24/7 shifts. They are trained annually on a harassment free workplace. The workplace needs to stress respect and civility. Mr. Piontkowsi discussed the Rules of Conduct.

Mr. Piontkowski learned of an argument in the breakroom in the processing area. It was extremely loud and out of the ordinary. The language used was not what would be

4

heard in the workplace because it contained explicit sexual language against a coworker. Human Resources took this incident seriously and conducted an exhaustive investigation. The grievant and Terri Lawson were terminated. He pointed out the investigation showed both employees were engaged in arguments. The grievant's work and behavior was "over-the-top" about Ms. Lawson and other women in the plant. He discussed the documentation related to this incident.

He pointed out the grievant called Ms. Lawson a "self-serving vagina bitch." He referred to other women in the plant as being worthless. He contended the language was "over-the-top" and he made the decision to terminate the grievant. He stated this language was more than shop talk, more egregious and sexually explicit.

He noted following the investigation, Ms. Lawson was terminated. He pointed out she filed a grievance. He contended her Union representative said she did nothing wrong because she approached the grievant with a question. The Company later backed off and decided to reduce her discipline to a suspension at the fourth step. She currently has an open grievance.

He discussed the extended rant of the grievant. He said it was loud and crossed the line. The manager gave a warning such language would not be tolerated.

While being cross-examined, Mr. Piontkowski said Ms. Lawson initially approached the grievant on a Union matter. He spoke to some of the witnesses and the grievant two times. He noted the grievant stated he originally said some of the stuff and "crossed the line." The grievant expressed little remorse. He relied on Human Resources' investigation. He contended Ms. Lawson said she did nothing wrong and questioned why she was being suspended.

He pointed out the grievant received annual training on February 20, 2018.  He reviewed the grievant's statement.  The words the grievant used were unacceptable no matter what the context.  The grievant "crossed the line."  Mr. Piontkowski testified he was not present in the breakroom during the incident.

He explained the training entitled Appropriate Behavior in the Workplace.  It is a 15 to 20-minute training.  This training covers respect and civility in the workplace, not creating a hostile work environment in the work culture.

Robert Ferringer testified he attended the hearing because of a subpoena.  He worked for the Company for twelve years and is a janitor on the first shift.  He works from 6 a.m. to 2:00 p.m. five days a week.  He goes in the breakroom at 1:00 p.m.  He is in the breakroom at 10:00 a.m.  He noted he is a Union member.  He knows Ms. Lawson and the grievant.

On January 11 at 1:00 p.m. he was cleaning the breakroom.  He discussed the area.  He cleans the counter, table, floor, takes the garbage.  Three people were in the breakroom including Ms. Lawson, Doug Giles, Dave Huntley.  He noted Mr. Giles and Mr. Huntley left.  Ms. Lawson was eating and the grievant walked in the room.  He said Ms. Lawson asked the grievant a question and he flipped out, got angry and started to shout.  Obscenities were used by the grievant and he called Ms. Lawson a "fucking no good vagina bitch."  The grievant used the word "fucking bitch" quite a few times.  Ms. Lawson's voice was firm, and he said she was not shouting at the grievant.  She told the grievant to calm down.

Mr. Ferringer thought the subject related to something from the prior day.  He noted the Union election was pending for the Processing Department.  The grievant was a

candidate. He pointed out Ryan Cerrie was the current Steward who came in at 1:00 p.m.

He heard Ms. Lawson say you set me up. He also heard a reference to the word penis – "If you don't have one of these you are nothing and not going anywhere in this Company." Reference was also made to the general area. He contended the "F word" was used quite frequently.

Mr. Ferringer said he was concerned about Ms. Lawson because of the tone of the conversation. The grievant was quite loud and worked up. Mr. Ferringer stated he was interviewed the next day.

While being cross examined Mr. Ferringer said he was interviewed by the Company three times. He admitted he changed his statement. He was not worried about his safety during the incident because of his location but was very nervous. He had no problem with the grievant. He said Ms. Lawson is one of his coworkers.

Terri Lawson testified she worked for the Company for sixteen years. She is a Batcher in the Processing Department, located in the cellar. She noted the breakroom is in the cellar. She described what is inside.

Ms. Lawson has known the grievant for five to six years. She said an election was pending for Union Steward in the Processing Department. A few employees ran against her.

At 1:00 p.m. on the day of the incident, she was in the breakroom. She sat down to eat. Mr. Ferringer was cleaning then she got up. She had a question for the grievant. She explained the prior day, she stopped in the breakroom and the grievant and Mr. Cerrie had run a scenario. They started to tell her what happened in the tank house. She stopped them and they continued to tell her. She did not know why they asked her

certain things she did not know about. She noted a guy later came up to her and said she threw him under the bus. He told her they set her up. She contended she tried to talk to the grievant later about feeling set up.

Ms. Lawson said the grievant used vile and obscene language. He said worthless self-serving vagina bitches and stated every female is a self-serving vagina bitch. He used the terms "talking stupid", worthless and retard if someone voted for her. The grievant told her "if she thought she could win she was more stupid than she thought." The grievant screamed at her. She testified she did not try to leave the room. The grievant was not going to bully her out of the breakroom. She pointed out the grievant said Mr. Ferringer was worthless and he had his head so far up Patty Waters' ass. He referred to Ms. Waters as being lazy, worthless and called her a self-serving vagina.

Ms. Lawson testified she prepared her own. Her interview with Human Resources occurred on the day of the event. She left and tried to call the supervisor and eventually talk to Jeff. She contended as she stood by the door on the day the incident, she continued to hear the grievant scream with Mr. Ferringer present. She noted she was suspended for the election and not able to be present.

Ms. Lawson stated she was terminated. She filed a grievance. The Company reduced her termination to a suspension. She received back pay. Her grievance remains open. She said the Union supports her position she was not wrong.

During cross-examination, Ms. Lawson discussed she ran for election. She said the grievant was yelling at Mr. Ferringer about him being worthless and always doing other people's work and not his own work. He told him the breakroom was a disaster, the garbage was overflowing and stinks to high hell. He called another employee lazy,

worthless and asked Mr. Ferringer why his head is up her ass because she is a worthless

vagina. She noted Mr. Ferringer commented "I don't agree with you." Ms. Lawson

talked to Cindy Vega on January 10. She explained Ms. Vega and Dave Anthony told

her they thought she was trying to be set up. Ms. Lawson stated she was perplexed,

curious and disappointed. She went to her workstation. She pointed out she did not raise

her voice or use swear words. She said in the interview she did raise her voice and

probably swore. She noted she was nervous and upset. She stated she swears on

occasion and noted 99% of the department swears. She uses the "F word" on occasion.

She testified on January 11 she did not use the "F word." She had a confrontation with

the grievant in the past. He used the "F word" in the past, but never used the same type

of language he used with her during this conversation.

Ryan Cerrie testified he worked for the Company for fourteen years. He was the

last Steward in the Processing Department. At the time of the incident there was an

election. He did not run in the last election. He works in the tank house in juice storage.

Mr. Cerrie has known the grievant for seven years. He knows Ms. Lawson. On

January 10 he and the grievant were talking about an incident on the apple railcar and the

grievant walked in and joined them. A mistake was made because a tanker was sent half-

full. He and the grievant discussed the incident. Ms. Lawson was asked about how she

would handle the situation as a Union Steward. Ms. Lawson responded to "hang them

both" referring to the individuals involved in the incident.

On January 11, he was talking to Kyle. He walked in the breakroom to talk to the

grievant about problems with white juice. He said Ms. Lawson asked him why the hell

did he tell Gary Ferrell about this. Ms. Lawson told him he was "fucked." The grievant

said he was tired of her running her mouth and telling people. The grievant told her he was tired of her telling people he is a "corporate cock sucker." Mr. Cerrie stated he left because he heard enough.

During cross-examination Mr. Cerrie said he has known the grievant for seven years. They are good friends and lift weights. He is not social friends with Ms. Lawson. He served as Steward two years. His name was on the ballot and he chose not to run. He pointed out he wanted to know how Ms. Lawson would handle a situation.

Cynthia Vega has been with the Company for eighteen years. She explained her job duties. She did not want anything to do with a Union position. She gets along fine with all of the employees involved in the situation.

She had a conversation with Ms. Lawson. She told her what happened. The grievant walked into the breakroom and she was asked a question about the situation and he asked what she would do. She did not see Ms. Lawson for the rest of the day. She was told not to call the grievant out because she was running for Union Steward.

During cross-examination Ms. Vega said Ms. Lawson was disappointed because she gave an opinion about the spilling or loss. She contended Ms. Lawson talked to Mr. Cerrie about it.

The grievant testified he worked with the Company for 6 ½ years. He was hired as a Batcher. He has been the Chief Steward for two years.

He had an up-and-down relationship with Mr. Ferringer. He pointed out Mr. Ferringer ran for Department Steward on the first shift. He won but Mr. Ferringer did not. No bad blood was created, but he heard Mr. Ferringer was upset.

On January 10 he had a conversation with Mr. Cerrie and Ms. Lawson. He was

the Chief Steward at the time. They talked about the incident with the tanker. He and Mr. Cerrie were animated and excited during the conversation and Ms. Lawson "butted in." He asked her what would she do because she was running for Department Steward and she responded "hang them both." Mr. Cerrie told her she can't do that and the conversation ended. The grievant said he did not try to set her up.

The grievant contended on January 11, 2019 he was running late and punched in two minutes early. He headed to the breakroom to relieve the Batcher. He was stopped by Carol Smith who needed to talk to him about the apple railcar. When he walked in the breakroom he did not know if Mr. Ferringer was there. He saw Ms. Lawson leaning on the microwave and knew something was going on. Ms. Lawson walked past him and started to yell at him about something said to Gary. He told her he did not talk to Gary. She got close to him and he asked her three times to backup. He saw Mr. Cerrie walk in. Ms. Lawson yelled at him and Mr. Cerrie. The grievant said he felt like he had to defend himself. He asked Ms. Lawson why she is telling people he is a corporate cock sucker and that he would only help people with penises and not vaginas. The grievant testified he argued and defended himself. He told Ms. Lawson both she and Mr. Ferringer were sideliners. The grievant contended he ran for office because he did not like what was going on. He discussed lazy employees. He contended he never said "self-serving vagina." He pointed out he is a big guy and his voice carries. He never called Ms. Lawson a "vagina bitch." He did use the word fuck and said it is not uncommon. He never grabbed an area of his body. He did state an employee was worthless for telling another employee to do her job. The grievant explained he wanted to leave the area but he did not want to take the chance of bumping into Ms. Lawson or Mr. Ferringer. The

grievant testified he slapped the table and said he was done talking, and Ms. Lawson left the room. The argument lasted for five minutes. Kyle walked in the room and he told him what happened.

The grievant testified during cross-examination he may have crossed the line by saying vagina, cocksucker and penis. He noted it is not uncommon to use the word fuck throughout the plant. If he said self-serving vagina it would have crossed the line. The term "fucking slather ass" is used all the time. He counseled a year ago. The grievant contended he was never trained on sexually explicit language. On February 20, 2018 he was trained on Appropriate Behavior in the Workplace. He stated fifteen minutes on the screen is not adequate training. He understands he needs to be respectful to employees.

The grievant stated he served as Chief Steward for two years. He was done being Chief Steward and wanted to run for Department Steward. On January 10, 2019 he and Ms. Lawson were candidates. He did not know why she felt set up. He explained a sideliner sits on the sideline and complains but does nothing about it. He became a Chief Steward to help with relationships around the plant, not to be sideliner. He tried to bring light to a dark situation at the facility. He explained the difference between being a Chief Steward and the Department Steward. He took his Union job seriously. The grievant discussed he won for Department Steward while he was suspended. He told Mr. Ferringer things he was doing were wrong and eventually he will get in trouble. The grievant testified he was concerned about leaving the room during the incident in question because he was 6'5" tall. He located himself in the farthest position from Ms. Lawson and Mr. Ferringer. He worked with Ms. Lawson for seven years. He contended he lost his job due to a bunch of lies.

12

## IV.   COMPANY POSITION

It is the position of the Company, its decision to terminate the grievant should be upheld by the arbitrator. He was terminated on January 21, 2019 for "creating a hostile work environment" by his "threatening and intimidating behavior and hostile language used in the breakroom on January 11, 2019..." The Company contends its action in this matter was an attempt to enforce the "minimum level of common decency" between employees in its facility.

The grievant's termination was due to his behavior in the Processing Department breakroom at approximately 1:00 p.m. on Friday, January 11, 2019. Three persons were present for the entire exchange. This included the grievant, Terri Lawson, and Rob Ferringer. Ms. Lawson asked the grievant a question related to the exchange the previous day between her, the grievant and another employee. Mr. Ferringer witnessed the exchange and found the grievant's behavior toward Ms. Lawson to be "vile and unacceptable" and felt that "there was no place in life for a man to talk that way, especially not at work and to a woman."

Ms. Lawson gave a statement to the Company on the day of the incident. The grievant called her and other women names. The grievant was interviewed and admitted he "probably crossed the line" in the breakroom. The Company points out at the arbitration hearing, he denied crossing any line, but admitted if the arbitrator found he did say the things which the witness said he did, he would have "crossed the line." The grievant admitted he had a "documented discussion" about going "on an extended rant" in the processing plant office on April 20, 2018 and was told such conduct "will not be tolerated in the future" and he would not "repeat this type of incident again". He was

trained in "appropriate behavior in the workplace". The Company submits the arbitrator should find the grievant "crossed the line" on January 11 and the Company's decision to terminate his employment was for just cause.

The Company contends the Union stated this matter involves a factual dispute and not a one to one credibility determination involving the grievant and Ms. Lawson. It also involves a third employee, Mr. Ferringer, who heard the entire exchange. The language used by the grievant was "vile and unacceptable." Mr. Ferringer noted Ms. Lawson was not at fault and "handled herself incredibly" under the circumstances. She did not swear during the exchange and the grievant used the "F word" so many times he could not remember. The arbitrator should find that Mr. Ferringer was "without incentive" to be anything but neutral and truthful. He was not a social friend of Ms. Lawson and not an enemy of the grievant. His testimony should be credited by the arbitrator.

The Company submits the grievant's "denials and his inconsistent testimony are unable to overcome the evidence of misconduct" toward Ms. Lawson. The Company provided the grievant with training about workplace behavior and warned him in April 2018 further violations of the Company's role regarding abusive behavior will not be tolerated. On January 11, 2019 the grievant showed he was unable to control his behavior toward a fellow employee and treat her with the "minimum level of common decency" which the Company was entitled to expect from him. For these reasons the Company submits the grievance should be denied.

## V.    UNION POSITION

It is the position of the Union there was no just cause for the discharge of the grievant. The Union points out the Company discharged the grievant for his alleged threatening and intimidating behavior and language used in the breakroom on January 11, 2019 which violated the Rules of Conduct. The Union contends fellow employee Terri Lawson instigated the confrontation with the grievant, yet she received a two-week suspension while the grievant had a termination imposed. These employees were engaged in an argument pertaining to a Shop Steward question the day prior to the incident. On January 11, 2019 Ms. Lawson confronted the grievant in the breakroom and falsely accused him of telling an employee about her comment. The Union contends this is an argument between the Chief Steward and an employee running for Steward regarding a Union matter. It was clearly precipitated by Ms. Lawson.

The Union points out it is not arguing the statements allegedly made by the grievant are merely shop talk. The Union submits the grievant did not make the statements as alleged by Ms. Lawson. Foul language was used by both employees. The Union contends this was an argument between Union members about Union matters during break time.

The Union states the testimony of Robert Ferringer is unreliable. Mr. Ferringer and the grievant had personal issues. When the grievant criticized Mr. Ferringer's work performance, Mr. Ferringer changed his written statement.

The Union takes a position Ms. Lawson is not credible. She and Mr. Ferringer stuck to their stories they told during the investigation. Admitting they lied during an investigation would jeopardize their jobs. The Union does not condone the kind of

conduct alleged to have been committed in this case.  It is not shop talk and has no place.

However, the Company failed to prove by a preponderance of evidence the grievant

engaged in misconduct.  The only matter proven is the grievant as the Chief Steward and

an employee running for Department Steward had an argument over a Union matter.  The

Union contends the testimony and documentary evidence presented by the Company is

conflicting, contradictory it makes no sense.  The Union questions why the grievant

would make outrageous statements to any of its members knowing it would result in his

termination.  Ms. Lawson's confrontation with the grievant was premeditated.  Once Ms.

Lawson and Mr. Ferringer made initial statements, they could not take them back because

false statements are grounds for discharge.  The statements and testimony against the

grievant are too inconsistent and unreliable to be given any weight.

The Company has failed to sustain the burden of proof for the grievant's

discharge.  The Union submits the appropriate remedy is reinstatement with full back pay

and contractual benefits.  The grievance must be sustained.


## V.   RELEVANT CONTRACTUAL PROVISIONS

### ARTICLE III
### Management

Section 1.  Direction of Work Force:  Subject to the provisions of this Agreement it is recognized that the operation of the plants and the direction of the workforce therein, including the right to hire, suspend, lay off, transfer, promote and demote, discipline, and discharge employees as defined in Article of this Agreement, are the function and responsibility of management.

Section 3.  Discharge:  The Company may discharge an employee for any reason which, in its judgment, is in the interest of the Company except Union activity.  The discharge of an employee is subject to review in accordance with the provisions of Article XII.

## VII.   **OPINION**

The issue to be determined as stipulated is whether there is just cause to discharge Pat Woodward, the grievant. A review the relevant record establishes the following material facts. The grievant is a Batcher who has worked for the Company for 6 ½ years. He is also the Chief Steward of the Union. On January 21, 2019, the Company terminated his employment for "creating a hostile work environment. Your threatening and intimidating behavior and language used in the breakroom on January 11, 2019 violates Welch's Rules of Conduct.."

On January 11, 2019, the grievant was in the breakroom with two other employees. The grievant and one of the employees, Ms. Lawson began to argue. The Company became aware of the argument and investigated the matter. Statements were taken from the grievant and the other two employees present during the incident. Both the grievant and Ms. Lawson were disciplined as a result of the incident. Ms. Lawson was terminated but later had her termination reduced to a two-week suspension. The grievant was terminated but his suspension was not reduced. The Union filed a grievance to contest the grievant's termination. When the matter was not able to be resolved through the grievance process arbitration resulted.

At the outset, the Company contends the grievant's discharge must be upheld by the arbitrator. He created a hostile work environment with threatening and intimidating behavior and hostile language used in the breakroom. Two witnesses were present and one found the grievant's behavior to be "vile and unacceptable." The Company points out the grievant has been involved in an incident like this in the past and was informed future violations would not be tolerated. The grievant was also trained on "Appropriate

Behavior in the Workplace." Thus, when the entire record is reviewed, the grievant's discipline as a discharge must be upheld.

It is the position of the Union there was no just cause to discipline the grievant. The Union points out a fellow employee instigated the confrontation that occurred. She received a less severe discipline than the grievant. The Union points out the context of argument related to a Union matter that a Chief Steward, who was the grievant and Ms. Lawson, who was running for Department Steward discussed the previous day. The Union submits Ms. Lawson approached the grievant the following day and caused the argument. The Union takes the position foul language was used by both individuals during the argument and as a result, the grievant should not have been disciplined more severely than the other individual involved. The Union concludes, based on the facts that have been presented, the Company failed to prove there was just cause to discipline the grievant and he must be reinstated with full back pay and benefits.

I have carefully considered the arguments of the parties in conjunction with the facts and relevant CBA language. The evidence establishes the grievant and another employee, Ms. Lawson were involved in a verbal confrontation on January 12, 2019. Ms. Lawson had a conversation with the grievant who serves as the Chief Steward and Mr. Cerrie, the Department Steward the day prior to the incident. During this conversation, the grievant and the Department Steward asked Ms. Lawson about a workplace matter and how she would handle the situation. After discussion, Ms. Lawson felt she was "set up" by the grievant and the Department Steward and confronted the grievant the next day, causing an argument to occur.

A witness was present during the argument. The grievant admitted to using inappropriate language during the argument which was reported to be heard by the witness and Ms. Lawson. The grievant also explained Ms. Lawson used inappropriate language with him and was the person who actually provoked the argument. The Company took action to terminate the employment of the grievant and Ms. Lawson. However, the Company reduced Ms. Lawson's discipline to a two-week suspension. The Company believed Ms. Lawson started the discussion with the grievant, but believed the grievant escalated the situation, his actions were far more severe and damaging to the Company and his termination was appropriate.

The evidence establishes Ms. Lawson instigated the argument with the grievant. She was unhappy about a discussion she had the prior day with the grievant and the Department Steward. She confronted the grievant on January 11, 2019 in the breakroom. The grievant and Ms. Lawson exchanged words which were witnessed by another individual. Both of these employees also used inappropriate language according to the witnesses and their individual testimony. Following the incident, the Company investigated the matter. It was determined both the grievant and Ms. Lawson said inappropriate comments. The Company terminated the employment of both individuals. However, the Company reduced Ms. Lawson's discipline to a suspension because it contended while she instigated the argument, the grievant was the one who escalated the situation and whose actions were far more severe and damaging to the Company.

The Company recognized the grievant was not the person who instigated the incident. He became part of the argument after an employee confronted him about a Union matter. He served as the Union's Chief Steward and was involved in a

conversation with Ms. Lawson the prior day about a Union matter. She was agitated by what was discussed and confronted him the next day. The evidence establishes both of the individuals said inappropriate comments to one another. The Company took action to discipline both of them with a termination but reduced Ms. Lawson's discipline to a 10-day suspension.

The Company acknowledged Ms. Lawson's role and the grievant's role in the incident. In its investigation the Company determined she was the instigator that caused the argument. The record shows the grievant and Ms. Lawson argued about a Union matter and such argument became escalated and heated. The witnesses to the incident as well as the testimony of the grievant and Ms. Lawson established both individuals said inappropriate comments to each other and used foul language during the argument.

In my opinion, the Company did have just cause to discipline the grievant. He was involved in the verbal confrontation with Ms. Lawson. He was the not the instigator, but he said inappropriate comments and used foul language during the incident. The subject matter involved a Union issue that was bantered between two individuals. The Company was correct to discipline the grievant for his involvement in the argument.

Related to the degree of discipline, the Company contends discipline at the level of termination was appropriate for the grievant. His language crossed the line during the incident. His comments escalated the situation and his actions were far more severe and damaging to the Company. Furthermore, the Company submits the grievant was warned around April 20, 2018, after he was on an extended rant such conduct would not be tolerated again by him in the future and he was not to repeat this type of incident. He was trained on Appropriate Behavior in the Workplace.

The Union states the grievant should not have been disciplined with a termination. His fellow employee initiated the confrontation. The argument was merely shop talk, related to an incident about a Shop Steward discussion. The Union also points out foul language was used by both the grievant and Ms. Lawson. However, the Company reduced her discipline from a termination to a 10-day suspension. Thus, the discipline imposed on the grievant in this instance was too harsh and must be removed from his record since he did not instigate the matter.

I have carefully considered the arguments of the parties in conjunction with the relevant CBA language related to the degree of penalty. The grievant was given a harsher penalty than Ms. Lawson even though both individuals were involved in the verbal confrontation. She was viewed by the Company as the aggressor and originally terminated like the grievant. However, although she started the incident, the Company decided to reduce her penalty from a 10-day suspension.

In my considered opinion, the discipline imposed on the grievant by the Company was too harsh in this instance. He was determined by the Company not to be the aggressor. Even though his language was not appropriate when he raised his voice and used inappropriate words during the argument, in my opinion his actions were the same as Ms. Lawson's actions because she raised her voice and also used inappropriate language. He was not the one that caused the argument, but was the one who was disciplined harsher. He used an inappropriate tone and language, and Ms. Lawson also testified that is how she raised her voice. She also admitted to using inappropriate language. It is therefore my determination the grievant's level of discipline as a termination must be reduced to a suspension like Ms. Lawson's discipline was reduced.

## AWARD

The Company had just cause to discipline the grievant.  The discipline of a termination imposed on him is to be reduced to a 10-day suspension.  The grievant is to be made whole for losses incurred.

This arbitrator retains jurisdiction in this matter until the grievant is returned to work and made whole.

Michelle Miller Kotula
Arbitrator
October 5, 2019