IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WELCH FOODS, Inc., a Cooperative d/b/a WELCH'S, | )<br>)<br>) |
| Plaintiff | ) Case No. 1:19-cv-00322 (Erie) |
| vs. | )<br>)<br>) RICHARD A. LANZILLO |
| GENERAL TEAMSTERS LOCAL UNION NO. 397, | ) UNITED STATES MAGISTRATE JUDGE<br>)<br>) REPORT AND RECOMMENDATION |
| Defendant | ) ON DEFENDANT'S MOTION TO<br>) DISMISS  (ECF NO. 4)<br>) |

I.  Recommendation

Defendant General Teamsters Local Union No. 397's Motion to Dismiss (ECF No. 4) Plaintiff Welch Foods, Inc.' Complaint (ECF No. 1) is before the undersigned on referral for Report and Recommendation in accordance with the Federal Magistrate Judges Act, 28 U.S.C. § 636, and Local Civil Rule 72.D.  For the reasons discussed below, it is respectfully recommended that the Defendant's motion be denied.

II.  Introduction and Background

Welch Foods, Inc. (Welch Foods) commenced this action to vacate a labor arbitration award entered pursuant to Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C §185 *et seq*.  Because Defendant General Teamsters Local Union No. 397 (Union) has moved to dismiss Welch Foods' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), the Court views the following factual allegations of the Complaint in the light most favorable to the nonmoving party, Welch Foods.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

Welch Foods is a "business cooperative" that produces grape juices, jams, and jellies at several locations, including a production facility in North East, Pennsylvania.  ECF No. 1, ¶ 2.  At all

1

times relevant to this action, Welch Foods and the Union have been parties to a collective bargaining agreement (CBA).  *Id.*, ¶ 6.

On January 21, 2019, following an internal investigation, Welch Foods notified Pat Woodward (Grievant), a male employee and member of the Union, that it was terminating his employment as the result of his conduct in an employee breakroom on January 11, 2019.  *Id.*, ¶ 7.  Welch Foods' January 21, 2019 termination letter advised Grievant that his discharge was based upon his engaging in "threatening and intimidating behavior and language" in violation of Welch Foods' workplace conduct rules and his having created "a hostile work environment."  ECF No. 1-2, p. 3.  The termination letter further specified that Grievant had used language toward a female employee (and women in the workplace generally) that was "abusive, sexually explicit, and derogatory."  *Id.*  Specifically, Welch Foods' investigation revealed that during the incident, Grievant "referred to his female co-workers as 'self-serving vagina bitches,'" and "fucking worthless"; he pointed to his groin area and stated, "if you don't have one of these you are no good;" and he called the female co-worker involved in the incident a "fucking no good vagina bitch" and repeatedly used the term "fucking bitch."  *Id.*, ¶ 8.

The Union filed a grievance challenging Grievant's termination and requesting that he "be reinstated to full time employment."  *Id.*, ¶ 9.  The grievance was processed through the procedures outlined in the CBA and ultimately proceeded to an arbitration hearing conducted before Arbitrator Michelle Miller-Kotula on April 26, 2019.  *Id.*, ¶ 10.  On October 26, 2019, the Arbitrator issued her Opinion and Award.  *Id.*, ¶ 11.  She concluded that Welch Foods "had just cause to discipline the grievant," but determined that "the discipline imposed on the grievant was too harsh in this instance."  *Id.*, ¶¶ 11-12.  The Arbitrator reduced Grievant's termination to a "10-day suspension" and directed Welch Foods to make him "whole for losses incurred."  *Id.*

Welch Foods alleges that since the Arbitrator issued her Award on October 5, 2019, "a number of female co-workers have requested that Welch Foods' move their lockers from the Processing Department breakroom due to their fear of being near the Grievant if he is reinstated as a result of the Arbitrator's Award." *Id.*, ¶13.

On October 31, 2019, Welch Foods filed this action to vacate the arbitration Award regarding Grievant's reinstatement. ECF No. 1. Welch Foods contends that the Arbitrator's order reinstating Grievant violates a well-defined and dominant public policy against sexual harassment in the workplace. *Id.*, ¶¶ 14-16. The Union has moved to dismiss Welch Foods' Complaint pursuant to Rule 12(b)6). ECF No. 4. The motion is fully briefed and ready for disposition.

III.    Standard of Review

    A.  Standard of Review Under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not deciding whether a plaintiff is likely to prevail on the merits; instead, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009).

To survive the Union's motion, Welch Foods' Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955. While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Id.* The court must accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff in making

this determination.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009); *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

### B.  Standard for Vacating Arbitration Awards

Under the Federal Labor-Management Relations Act of 1947, courts have an extremely limited role in resolving labor disputes.  *See United Paperworkers International Union v. Misco*, 484 U.S. 29, 36, 108 S. Ct. 364, 370, 98 L.Ed.2d 286 (1987).  Judicial restraint is particularly appropriate where a federal court is asked to vacate a labor arbitration award, as Welch Foods requests in this case.  *See Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960) (emphasizing that "[t]he refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements").[1]  This is because the federal policy

---

[1] *Enterprise Wheel*, along with *USW v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960) and *USW v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) are often referred to as the "*Steelworker* Trilogy." *See, e.g., Washington Hosp. v. SEIU Healthcare Inc.*, 2014 WL 11430876, at *2 (W.D. Pa. Aug. 20, 2014), *aff'd sub nom. Washington Hosp. v. SEIU Healthcare Inc. Pennsylvania*, 615 Fed. Appx. 56 (3d Cir. 2015).  Together, these cases set out "that the bedrock tenet of labor arbitration is that the arbitrator does not sit to create new terms for the parties or impose on them his own idea of what the labor contract should provide, but rather is hired to read the contract, determine the parties' mutual intent, and enforce the contract as written." *Id.*

favoring settlement of labor disputes by arbitration would be "undermined if courts had the final say on the merits of awards." *SEIU Healthcare Pennsylvania, CTW, CLC v. Reg'l Hosp. of Scranton*, 106 F. Supp. 3d 523, 531 (M.D. Pa. 2015) (citing *Enterprise Wheel*, 363 U.S. at 597, 80 S. Ct. 1358). So, "as long the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco*, 484 U.S. at 37, 108 S. Ct. at 367 (citing *Enterprise Wheel*, 363 U.S. at 597, 80 S. Ct. 1358). *See also Eastern Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57, 121 S. Ct. 462, 148 L.Ed.2d 354 (2000).

The policy favoring enforcement of labor arbitration awards, however, is not absolute. Courts may refuse to enforce an arbitration award issued under a CBA when the award violates public policy. *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L.Ed.2d 298 (1983). The Supreme Court explained:

> In *W.R. Grace*, we recognized that "a court may not enforce a collective-bargaining agreement that is contrary to public policy," and stated that "the question of public policy is ultimately one for resolution by the courts." 461 U.S., at 766, 103 S. Ct., at 2183. We cautioned, however, that a court's refusal to enforce an arbitrator's interpretation of such contracts is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Ibid.* (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S. Ct. 442, 451, 89 L.Ed. 744 (1945)).

*Misco*, 484 U.S. at 43, 108 S. Ct. at 373.

The Supreme Court clarified this exception further in *Eastern Associated Coal*:

> The Court has made clear that any such public policy must be "explicit," "well defined," and "dominant." [*W.R. Grace*, 461 U.S. at 766, 103 S. Ct. 2177]. It must be "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Ibid.* (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S. Ct. 442, 89 L.Ed. 744 (1945)); accord, *Misco, supra*, at 43, 108 S. Ct. 364. And, of course, the question to be answered is not whether Smith's drug use itself violates public policy, but whether the agreement to reinstate him does so. To put the

5

> question more specifically, does a contractual agreement to reinstate Smith with specified conditions ... run contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests? *See Misco, supra*, at 43, 108 S. Ct. 364.

531 U.S. at 62–63, 121 S. Ct. 462.

"Since the decisions in *W.R. Grace*, *Misco*, and *Eastern Associated Coal*, the public policy exception to the enforcement of private sector labor arbitration awards has resulted in the vacating of arbitration awards only where the award itself, in the context of requiring the reinstatement of an employee, violates or is in explicit conflict with a specific statute, regulation, or judicial decision." *SEIU Healthcare Pennsylvania*, 106 F. Supp. at 532. That said, the public policy exception is "slim indeed." *Kinder Morgan Bulk Terminals, Inc. v. United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, & Its Local 1*, 9 F. Supp. 3d 507, 518 (E.D. Pa. 2014). As the Court of Appeals explained, in order to trigger the exception a party must show that the "award create[s] an explicit conflict with an explicit public policy." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 382 (3d Cir. 1995). That is, in determining "whether an award violates public policy, the analysis turns on whether the arbitrator's award 'created any explicit conflict with other laws and legal precedents rather than an assessment of general considerations of supposed public interests.'" *D.A. Nolt, Inc. v. Local Union No. 30 United Union of Roofers, Waterproofers & Allied Workers*, 661 Fed. Appx 200, 205 (3d Cir. Sept.23, 2016) (citing *Misco, Inc.*, 484 U.S. at 43, 108 S. Ct. 364 (quoting *W.R. Grace*, 461 U.S. at 766, 103 S. Ct. 2177)).

IV.   Analysis

Welch Foods contends that the Arbitrator's award in this case violates a well-established public policy prohibiting sexual harassment in the workplace. Welch Foods is correct that the Court of Appeals for the Third Circuit has recognized "a well-defined and dominant public policy concerning sexual harassment in the workplace which can be ascertained by reference to law and

legal precedent." *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436, 1441 (3d Cir. 1992), *cert. denied* 506 U.S. 1022, 113 S. Ct. 660, 121 L.Ed.2d 585 (1992). This public policy derives from Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2(a)(1), which prohibits employment discrimination because of sex, as well as Supreme Court precedent such as *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64–67, 106 S. Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986), which interprets Title VII's prohibition to include sexual harassment in the workplace that creates a hostile or offensive work environment, and EEOC regulations defining sexual harassment as including "verbal or physical conduct of a sexual nature" that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." 29 C.F.R. § 1604.11(a) (1991) (footnote omitted). *See also Atwood v. Biondi Mitsubishi*, 1993 WL 244063, at *1 (W.D. Pa. May 12, 1993) ("There is a well-defined and dominant public policy concerning sexual harassment in the workplace.")

   The Court's decision in *Stroehmann* is particularly relevant to this case. There, an employer discharged a deliveryman after determining that he had sexually harassed a customer's employee. *Stroehmann*, 969 F.2d at 1439-40. An arbitrator ordered the deliveryman's reinstatement but did not decide whether the sexual harassment had actually occurred. *Id.* Instead, the arbitrator concluded that reinstatement was warranted because the employer had not undertaken an adequate investigation. *Id.* at 1440. The District Court vacated the arbitration award, and the employee's union appealed. The Court of Appeals for the Third Circuit agreed with the District Court that the arbitrator's award violated public policy and affirmed. The Court held that "an arbitrator's award reinstating an employee accused of sexual harassment without a determination regarding the merits of the allegation violates well-established and dominant public policies concerning sexual harassment in the workplace." *Id.* at 1438.

Thus, *Stroehmann* authorizes a district court to vacate an arbitration award when the arbitrator reinstates a worker accused of sexual harassment without making findings concerning whether the employee engaged in the conduct upon which the accusation was based. 969 F.3d at 1437–38. Where the arbitrator's award orders reinstatement without a finding that the employee did not engage in such conduct, the award conflicts with "the well-defined and dominant public policy concerning sexual harassment in the workplace and its prevention." *Chamberlain Mfg. Co. v. Local Lodge No. 847*, 474 F. Supp. 2d 682, 692 (M.D. Pa. 2007) (citing *Stroehmann*, 969 F.2d at 1438).

As in *Stroehmann*, the Arbitrator's findings in this matter did not address whether the Grievant engaged in the specific conduct of which he was accused. Among other conduct, Grievant allegedly called female co-workers "self-serving vagina bitches" and "fucking worthless" and told a female employee that "if you don't have one of these you are no good," while pointing at his groin. A finding that the Grievant had engaged in such conduct easily would have been enough to demonstrate that he had engaged in sexual harassment under federal law. *See* 29 C.F.R. § 1604.11(a) (1991).

Although the Arbitrator provided a detailed summary of the witnesses' testimony, her factual findings were limited and essentially boiled down to the following:

- Grievant was involved in a verbal confrontation with a female co-worker on January 12, 2019.
- The female employee had a conversation with the department steward the day before the incident.
- The female employee felt "set up" and confronted Grievant the next day; this encounter resulted in an argument, which was witnessed by another employee.

- Grievant admitted to using inappropriate language during the argument which was heard by the female employee and the co-worker witness.

- Grievant testified that the female employee used inappropriate language with him and was the person who instigated the argument.

- Welch Foods terminated both employees.

- Welch Foods reconsidered the female employee's termination and reduced her discipline to a two-week suspension because, although she instigated the argument, Grievant escalated the situation.

ECF No. 1-2, pp. 21-22.

Based on the record before her, the Arbitrator ultimately concluded that "the Company did have just cause to discipline the grievant" and that it "was correct to discipline the grievant for his involvement in the argument." *Id.* at p. 22. But she did not address the specific conduct of which he was accused. Although the Arbitrator found that Grievant engaged in "foul" and "inappropriate" language and conduct (ECF No. 1-2, pp. 21-23), she did not specify the substance of either. In ordering Grievant's reinstatement, the Arbitrator reasoned that he "was given a harsher penalty" than the female employee despite the fact that "both individuals were involved in the verbal confrontation." *Id.*, p. 23. However, the fact that the female employee participated in, or even instigated, a verbal confrontation does not authorize or invite language and conduct such as the language and conduct Grievant is alleged to have demonstrated on January 11, 2019. Indeed, the proposition that Grievant should be reinstated because the female employee "instigated" the argument sounds disturbingly like excusing the inexcusable because "she started it." Nothing in the Arbitrator's award or otherwise before this Court, however, indicates that Grievant's alleged comments and conduct could be considered "welcome" to negate a finding of sexual harassment.

9

*See Doe ex rel. Doe v. N. Allegheny Sch. Dist.*, 2011 WL 3667279, at *8 (W.D. Pa. Aug. 22, 2011) (citing *Chancellor v. Pottsgrove Sch. Dist.*, 501 F.Supp.2d 695, 705 n .10 (E.D.Pa.2007). *See also Meritor Sav. Bank,* 477 U.S. at 68, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986) ("The gravamen of any sexual harassment claim" is that the alleged sexual conduct was "unwelcome."). Similarly, while the Arbitrator found that the female employee also "raised her voice and also used inappropriate language" (ECF No. 1-2, pp. 21-23), this in no way invites or excuses the conduct of which the Grievant was accused. Unlike Grievant's alleged conduct, nothing in the record indicates that the female employee's language or actions rose to the level of sexual harassment. Further, the question whether Welch Foods was "too lenient" in its discipline of the female employee is simply irrelevant to a determination of whether Grievant's reinstatement violates public policy.

Because the Arbitrator's Award does not address whether Grievant committed the conduct of which he was accused, and upon which Welch Foods determined he engaged in sexual harassment, thereby necessitating his termination, the allegations of the Complaint state a claim for vacating the Award. *See Stroehmann*, 969 F.2d at 1437-38, 1441-42 (district court properly vacated arbitrator's award reinstating an employee accused of sexual harassment where the arbitrator did not determine the truth or falsity of sexual harassment allegations against the employee.). *See also Chamberlain Mfg. Co. v. Local Lodge No. 847*, 474 F. Supp. 2d 682, 692 n.4 (M.D. Pa. 2007). This is not a case where the Court "simply … disagrees" with the arbitrator's interpretation of the law. *See News America Publications, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990). Rather, it is one where the Court cannot identify or divine any specific findings by the arbitrator on the most critical factual issues of the case. This puts Welch Foods in the untenable position of having to reinstate an employee who it believes, and who may, in fact, have, engaged in sexual harassment in violation of federal law.

V.     Conclusion

For the reasons discussed above, it is respectfully recommended that the Union's motion to dismiss be DENIED.[2]

VI.    Notice

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Rule 72.D.2 of the Local Rules of Court, the Parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto.  The failure to file timely objections will constitute a waiver of his appellate rights.

Entered this 6th day of August, 2020.

_____
RICHARD A. LANZILLO
United States Magistrate Judge

---

[2] The only issue currently before the Court is whether Welch's Complaint should be dismissed pursuant to Rule 12(b)(6). Having concluded that the Complaint states a claim for vacating the Award, the undersigned has recommended that the Union's motion be denied.  Because questions regarding the final outcome of this case and what relief may be appropriate are not presently before the Court, the undersigned has offered no opinion or recommendation on such matters.  Consideration of such issues, including whether the matter should be remanded to the Arbitrator for clarification, may be appropriate after the pleadings are closed or upon a more developed record.  Nevertheless, the undersigned notes that while courts generally disfavor remanding matters to the arbitrator for clarification, they have done so "when the remedy awarded by the arbitrator[ ] is ambiguous..." *United Elec., Radio & Mach. Workers of Am. v. Gen. Elec. Co.*, 2020 WL 1542375, at *3 (W.D. Pa. Mar. 31, 2020) (citations omitted).  *See also, Stroehmann*, 969 F.2d at 1439 (affirming decision to remand matter to a different arbitrator).  Indeed, under certain circumstances, courts have found that remand reinforces "the strong federal policy favoring arbitration."  *See United Steel, Paper & Forestry v. Sekisui Specialty Chemicals America*, LLC, 2012 WL 692810, *4 (W.D. Ky. Mar. 1, 2012 (citing *Armco Employees Independent Federation, Inc. v. Armco Steel Co., L.P.*, 65 F.3d 492, 496 (6th Cir. 1995).  This is because "the arbitrator, not the court, should clarify an ambiguous arbitration award." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991).