IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WELCH FOODS, Inc., a Cooperative d/b/a WELCH'S, | ) ) ) |
| Plaintiff | ) ) Case No. 1:19-cv-00322 (Erie) |
| vs. | ) ) ) RICHARD A. LANZILLO |
| GENERAL TEAMSTERS LOCAL UNION NO. 397, | ) UNITED STATES MAGISTRATE JUDGE ) ) |
| Defendant | ) REPORT AND RECOMMENDATION ) |

I.  Recommendation

Plaintiff Welch Foods Inc. (Welch Foods) commenced this action to vacate a labor arbitration award entered pursuant to Section 301 of the Labor-Management Act of 1947, *as amended*, 29 U.S.C. § 185, *et seq*.  Defendant General Teamsters Local Union No. 397 (Union) moved to dismiss Welch Food's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 4.  The Court denied that motion.  ECF No. 21.  Presently before the Court are cross-motions for summary judgment.  *See* ECF No. 24; ECF No. 33.  For the reasons that follow, it is respectfully recommended that the pending motions for summary judgment be dismissed, without prejudice, and that this matter be remanded to the Arbitrator for clarification of certain findings of fact.

II.  Report

A.  Background

The facts underlining this litigation are detailed in the undersigned's previous Report and Recommendation.  *See gen*., ECF No. 14.  A summary is all that is needed here.  On January 21, 2019, Welch Foods terminated Pat Woodward's employment following a complaint and internal investigation of alleged workplace misconduct.  ECF No. 1, ¶ 7.  Welch Foods notified Woodward that his termination was due to his having engaged in "threatening and intimidating behavior and

1

language" and his having "created a hostile work environment." ECF No. 1-2, p. 3. Specifically, Welch Foods asserted that, while he was present in an employee breakroom on January 22, 2019, Woodward had used "abusive, sexually explicit, and derogatory" language toward a female employee. The alleged misconduct included referring to "his female co-workers as 'self-serving vagina bitches' and as being 'fucking worthless,'" pointing to his groin area and stating, "if you don't have one of these you are no good," and calling a female co-worker a "fucking no good vagina bitch." *Id.*

Thereafter, the Union filed a grievance seeking Woodward's reinstatement to full employment with backpay. *Id.*, ¶ 9. Pursuant to the parties' collective bargaining agreement, the matter proceeded to arbitration before Arbitrator Michelle Miller-Kotula on April 26, 2019. Concluding that "the discipline imposed on [Woodward] was too harsh," the Arbitrator reduced his termination to a 10-day suspension and directed Welch Foods to make him "whole for losses incurred." *Id.*, ¶¶ 11-12. Welch Foods filed this action to vacate the arbitration award.

B. Positions of the Parties

In support of its motion for summary judgment, the Union relies on the well-established federal policy favoring resolution of labor disputes by arbitration and the "limited role" a federal court plays "when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 36, 108 S. Ct. 364, 98 L.Ed.2d 286 (1987); *see also W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 764, 103 L. Ed. 2d 298 (1983). The Union correctly argues that "[c]ourts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Misco*, 484 U.S. at 36; 108 S. Ct. 364. This is because "the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Id.* (quoting *United Steelworkers of Am.*, 363 U.S. at 596).

In its cross-motion, Welch Foods counters that the Arbitrator's award violates the "well-defined and dominate public policy" against sexual harassment in the workplace and, as a result, must be vacated. *See* ECF No. 35, p. 4. Judicial recognition of the public policy upon which Welch Foods relies is beyond dispute. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L.Ed.2d 298 (1983); *Stroehmann Bakeries, Inc. v. Local 7756, International Brotherhood of Teamsters*, 969 F.2d 1436, 1441-42 (3d Cir. 1992) , *cert. denied* 506 U.S. 1022, 113 S. Ct. 660, 121 L. Ed.2d 585 (1992). Welch Foods also correctly asserts that "a court may not enforce a collective bargaining agreement that is contrary to public policy" and thus may not "enforce an arbitrator's award" made under such an agreement. *Kinder Morgan Bulk Terminals, Inc. v. United Steel, Paper & Forestry, Rubber Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, & Its Local 1*, 9 F. Supp. 3d 507, 515 (E.D. Pa. 2014) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42, 108 S. Ct. 364, 98 L.Ed.2d 286 (1987) (additional citation omitted)). Unlike the merits of the underlying labor dispute, "the question of public policy is ultimately one for resolution by the courts." *W.R. Grace*, 461 U.S. at 766.

  C. Analysis

A court's determination whether to vacate an arbitration award based on public policy requires a two-step process. First, the court must ask "whether a well-defined and dominant public policy can be identified." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir.1996). Second, if the court identifies such a policy, then it must "determine whether the arbitrator's award, as reflected in his or her interpretation of the agreement, violated [that] public policy." *Id.* at 1291–92. A court should vacate an award if enforcing it would "thwart the purpose" of a statute's terms. *Exxon Shipping Co. v. Exxon Seamen's Union,* 993 F.2d 357, 360 (3d Cir. 1993). *See also Kinder Morgan Bulk Terminals, Inc.,* 9 F. Supp. 3d at 516.

The first part of this test is easily met here.  The Court of Appeals for the Third Circuit has recognized "a well-defined and dominant public policy concerning sexual harassment in the workplace which can be ascertained by reference to law and legal precedent."[1]  *Stroehmann Bakeries*, 969 F.2d at 1441.  This public policy derives from several sources, including:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2(a)(1), which prohibits employment discrimination because of sex;

- Supreme Court precedent such as *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64–67, 106 S. Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986), which interprets Title VII's prohibition to include sexual harassment in the workplace that creates a hostile or offensive work environment; and

- EEOC regulations defining sexual harassment as including "verbal or physical conduct of a sexual nature" that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment."  29 C.F.R. § 1604.11(a) (1991) (footnote omitted).

This Court also has long recognized this public policy.  *See Atwood v. Biondi Mitsubishi*, 1993 WL 244063, at *1 (W.D. Pa. May 12, 1993) ("There is a well-defined and dominant public policy concerning sexual harassment in the workplace.").

Once the court identifies a well-defined and dominant public policy, it must determine whether the award violates that policy.  In doing so, the court must not "rule on either the merits of

---

[1] The Union maintains that Woodward was not terminated for sexual harassment.  *See* ECF No. 25, pp. 17, 19-21.  This position is difficult to square with the factual assertions in Welch Food's termination letter and applicable law.  The termination letter referenced Woodward's barrage of sexually derogatory statements and conduct.  Employment discrimination prohibited by Title VII includes "discrimination based on sex [that] has created a hostile or offensive work environment."  *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S. Ct. 2399 (1986).  Additionally, the Equal Employment Opportunity Commission has promulgated regulations defining sexual harassment under Title VII in terms that encompass conduct of the type alleged against Woodward.  *See* 29 C.F.R. § 1604.11.  *See also, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998); *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998); *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. Of Teamsters*, 969 F.3d 1436 (3d Cir. 1992); *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers*, 959 F.2d 685 (7th Cir. 1992).

the allegations or impose the remedy it [thinks] appropriate." *Stroehmann Bakeries*, 969 F.2d at 1444. Instead, where the award violates public policy, the court's roles is to remand "the matter for a redetermination in light of that public policy." *Id.* The Court's ability to determine whether an arbitration award violates public policy is frustrated where ambiguity or gaps exist in the factual findings of the arbitrator. *See Brookdale Hosp. v. Local 1199, National Health & Human Service Employees Union*, 107 F. Supp.2d 283, 293 (S.D.N.Y. 2000). This is the challenge presented by the arbitration award in this case. The undersigned previously detailed the ambiguities and gaps in the Arbitrator's Opinion and Award and will only briefly summarize them here. *See* ECF No. 14.

The Arbitrator's Award recounts in detail the history of the employment dispute, including the grievance submitted and the positions of each party. *See* ECF No. 1-2, pp. 3-19. The Arbitrator reports that Welch Foods fired Woodward for "creating a hostile work environment" and because his "threatening and intimidating behavior and language used in the breakroom on January 11, 2019, violates Welch' Rules of Conduct." *Id.*, p. 3. She recounts the specifics of Welch's position:

> Pat was terminated on January 21 for his role in a hostile argument with coworker Terri Lawson on January 11. It was determined that during this argument, *Pat used language that was abusive, sexually explicit, and derogatory towards Terri and women in the workplace. In addition to creating a hostile work environment, he engaged in behavior that was threatening and intimidating.* Among other things, Pat referred to Terri and female coworkers as self-serving vagina bitches and fucking worthless. He gestured to his groin area and made a comment along the lines of 'if you don't have one of these you are no good.' He also puffed out his chest and slapped the table.

*Id.*, p. 5 (emphasis supplied).

In the "Background" section of her Award, the Arbitrator restates the testimony of several witnesses, including David Piontkowski, the plant manager, Robert Ferringer, Terri Lawson, Ryan Cerrie, Cynthia Vega, and Pat Woodward, the grievant. *Id.*, pp. 12-14. The Arbitrator continues by setting out the positions of both Welch Foods and the Union. *Id.*, pp. 15-19. In the "Opinion" section of the Award, she identifies the issue to be determined as "whether there is just cause to

discharge Pat Woodward, the grievant." *Id.*, p. 19.  Although the Arbitrator provides a detailed summary of the witnesses' testimony, her factual findings were limited and essentially boiled down to the following: 1) Woodward was involved in a verbal confrontation with a female co-worker on January 12, 2019; 2) the female employee had a conversation with the department steward the day before the incident; 3) the female employee felt "set up" and confronted Woodward the next day; 4) this encounter resulted in an argument, which was witnessed by another employee; 5) Woodward admitted to using inappropriate language during the argument which was heard by the female employee and the co-worker witness; 6) Woodward testified that the female employee used inappropriate language with him and was the person who instigated the argument; 7) Welch Foods terminated both employees; and 7) Welch Foods reconsidered the female employee's termination and reduced her discipline to a two-week suspension because, although she instigated the argument, Woodward escalated the situation.  ECF No. 1-2, pp. 21-22.  Based on the record before her, the Arbitrator ultimately concluded that "the Company did have just cause to discipline the grievant," but the discipline of termination was too severe.[2]  *Id.* at p. 22.

The Arbitrator did not, however, address the specific conduct of which Woodard was accused.  Although the Arbitrator found that Woodward engaged in "foul" and "inappropriate" language and conduct (ECF No. 1-2, pp. 21-23), she did not specify the substance of either.  *See Welch Foods, Inc. v. Gen. Teamsters Local Union No. 397*, 2020 WL 7130670, at *5 (W.D. Pa. Aug. 6, 2020), *report and recommendation adopted*, 2020 WL 5834210 (W.D. Pa. Sept. 30, 2020).  Thus, the Arbitrator did not determine whether Woodward's actions amounted to sexual harassment.  Both

---

[2] The Court is mindful that it may not "set aside the award because in its view discharge was the correct remedy, since arbitrators normally have wide discretion in formulating remedies." *Misco, Inc.*, 484 U.S. at 30, 108 S. Ct. at 366–67.  The Court is not questioning this discretion.  As discuss immediately below, the problem here is the omission of findings of fact on the allegations of sexual harassment against Woodward and, if applicable, consideration of the "pertinent public policy" against sexual harassment in the workplace.  *See Stroehmann Bakeries*, 969 F.2d at 1443.

parties essentially acknowledge the ambiguities and gaps in the Arbitrator's factual findings. *See* ECF No. 25, p. 21; ECF No. 35, pp. 2, 7-8.

These ambiguities and gaps preclude summary judgment for either party. The Court simply cannot ascertain from the Award whether the Arbitrator found that Woodward had engaged in conduct constituting sexual harassment under federal law. This precludes the Court from sustaining or vacating the Award and begs the question of what alternative action is appropriate. A district court generally may not interpret an ambiguous arbitration award; remand to the arbitrator is also discouraged. *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir.1991). But in *Colonial Penn*, a case governed by the Federal Arbitration Act, the Court of Appeals recognized exceptions to the general bar against remand as follows:

> (1) an arbitrator "can correct a mistake which is apparent on the face of his award"; (2) "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination"; and (3) "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."

*Id.* at 332 (internal citations omitted; brackets in original) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 573 (3d Cir.1967)); *see also Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999).

Of interest in this case is the third exception, which pertains to an ambiguity in the award. The Court of Appeals has explained that this exception applies for the "limited purpose … to clarify an ambiguity" and may be used to "serve[] the practical need for the district court to ascertain the intention of the arbitrator[] so that the award can be enforced." *Brownsville Gen. Hosp.*, 186 F.3d at 332 (quoting *Colonial Penn*, 943 F.2d at 334)). Remand in such situations is "consistent with the policy of judicial restraint that is the thrust of federal arbitral jurisprudence because it gives the arbitrator the opportunity to clarify an award with respect to which an ambiguity has arisen rather

7

than forcing the court to interpolate its own estimate of the arbitrator's intent." *Id.* Thus, although the merits of the controversy may not be revisited upon remand,

> when the remedy awarded by the arbitrators is ambiguous, a remand for clarification of the intended meaning of an arbitration award is appropriate.... Such a remand avoids the court's misinterpretation of the award and is therefore more likely to give the parties the award for which they bargained.

*Id.* at 332 (quoting *Colonial Penn*, 943 F.2d at 334).

The situation presented here fits within the ambiguity exception discussed in *Colonial Penn*. *See also Norwin School Bus Drivers Assoc. v. First Student, Inc.*, 2016 WL 4701487 (W.D. Pa. Sep. 8, 2016).

III. Conclusion

For the reasons stated herein, this matter should be remanded to Arbitrator Michelle Miller Kotula for clarification of the findings of her Award of October 5, 2019, as follows:

1. The Arbitrator's specification of her factual findings regarding the sexual harassment allegations against Woodard, and

2. If the Arbitrator found merit to those allegations, her consideration of the "pertinent public policy" against sexual harassment in the workplace. *See Stroehmann Bakeries*, 969 F.2d at 1443.

It is further recommended that the pending cross motions for summary judgment be dismissed, without prejudice to refiling upon clarification of Arbitrator's Award.

IV. Notice to the Parties

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Rule 72.D.2 of the Local Rules of Court, parties shall have fourteen (14) days from the date of the service of this Report and Recommendation to file written objections thereto. A party's failure to file timely objections will constitute a waiver of his appellate rights.

Submitted this 25th day of January, 2021.

_____
RICHARD A. LANZILLO
United States Magistrate Judge